STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss.                         CIVIL ACTION
                                        DOCKET NO. 22-79

                                        PorSC-RE-2022-'79

FRANK G DEWOLFE *et al.*

v.                                      JUDGMENT

TYRONE AGRO


On February 23, the court heard a one-day bench trial on Plaintiff's Complaint. Count I of the Complaint alleges trespass. Count II alleges a declaratory judgment asking that the court declare the common boundary between the parties and requests injunctive relief. The Answer raises adverse possession, statute of limitations and "ownership and right of way."

The court finds the following facts.

1.  Defendant Tyrone Agro owns two lots, 37 and 38, depicted in a 1924 plan, "Cottage Lots" on land divided by Warren Winslow in Gray. He purchased the lots with a house in 1987 and raised a large family.

2.  Agro's land is abutted generally on two sides by property owned by Plaintiffs Frank and Serina DeWolfe. The DeWolfes acquired their property in one parcel from Josephine and Linwood Day in 2002 and another parcel from Tammy Gilman in 2003.

3.  Pursuant to his deed, Agro has easement rights across the DeWolfe property. Referring to the 1924 Plan, he has "a right of way to pass and repass in common with others over a certain woods road shown at the top of said Plan . . . ." That road is now known as Cottage Road. The Plan does not show the road, but the road did abut the Agro property and the location of the near side of the right of way was fixed by the Agro property description. The deed did not describe any additional rights to use the easement.

1

4. The DeWolfe deed acknowledges that the property is "subject to the rights of others" in Cottage Road, but also provides no further description of the easement rights.

5. In 1998, three individuals formed a road association for Cottage Road. It is not apparent to the court that the Road Maintenance/Easement Agreement binds any of the parties. Other than maintenance obligations, the Agreement does not change any of the rights of anyone benefited or burdened by the Cottage Road easement.

6. In 2007, after obtaining permission of the Road Association and the Town, the DeWolfes relocated the easement. After the DeWolfes's attempt to relocate the easement, the easement still abuts the northerly side of the Agro property. It no longer abuts the western side. There was no evidence that Agro agreed to the relocation of the right-of-way.

7. Not surprisingly, the Agro's large family explored and played on the roads and nearby woods. Family activities included parking vehicles, sledding, collecting firewood, road maintenance on the right of way, and depositing debris associated with automobile repair.

8. Prior to 2007, or thereabout, when Agro built a brick patio and fence on the westerly side of his property, he primarily parked his vehicles out of the right-of-way and on his property adjacent to the house. From time to time the vehicles that he parked extended into or on the right-of-way.

9. Agro's brick patio and fence encroach on the DeWolfe property.

10. The relations between the parties began to deteriorate. Agro kept a vehicle parked on the DeWolfe property and in the right of way.

11. DeWolfe complained that the vehicle blocked his route to the water when he towed his boat. DeWolfe had permanently parked a car on the other side of the right-of-way to

2

prevent Agro from using that location to park. His own car parked in that section contributed to the difficulty moving his boat to and from the lake.

12. The location of the boundary as well as Agro's fence, brick patio and planters as depicted on a survey by David St. Clair, as revised on November 23, 2022, and marked at trial as Exhibit D-1 ("Survey") are undisputed.

CONCLUSIONS OF LAW

## A. Adverse Possession

Because Agro's primary defense was adverse possession, the court addresses the issue first.

> To succeed on an adverse possession claim, a party must prove by a preponderance of the evidence that "possession and use of the property was (1) actual; (2) open; (3) visible; (4) notorious; (5) hostile; (6) under a claim of right; (7) continuous; (8) exclusive; and (9) for a duration exceeding the twenty-year limitations period. . . . [A]dverse possessors typically only acquire that property which they actually possessed.

*Grondin v. Hanscom*, 2014 ME 148, ¶ 13, 106 A.3d 1150 (citations omitted). "As a general rule, Maine law 'disfavors the transfer of land by adverse possession.'" *Fissmer v. Smith*, 2019 ME 130, ¶ 41, 214 A.3d 1054 (quoting *Striefel v. Charles-Keyt-Leaman P'ship*, 1991 ME 111, ¶ 13, 733 A.2d 984).

Here, the fence and brick patio encroaching onto the DeWolfe property may have met the first eight requirements. They do not, however, meet the twenty-year requirement. The Agros's other activities on the land do not meet the requirements to establish adverse possession. Maintenance of the road was incident to their easement rights and could not be considered hostile. Although the other activities were frequent, they were not the types of activities that stake a claim to exclusive possession of the property. Nor is the court satisfied they were continuous for twenty years. Finally, Agro never provided evidence that would support the

court's description of land acquired by adverse possession. Therefore, the court concludes that Agro cannot prevail on a claim of adverse possession.

**B. Trespass**

Count I alleges trespass. The court reads the count to allege common law trespass.

One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally

- (a) enters land in the possession of the other, or causes a thing or a third person to do so, or
- (b) remains on the land, or
- (c) fails to remove from the land a thing which he is under a duty to remove.

Restatement (Second) of Torts § 158 (1965); *Medeika v. Watts*, 2008 ME 163, ¶ 5, 957 A.2d 980. While an easement benefitting Agro burdens the DeWolfe land, the DeWolfes still own the fee and the easement holders only have the right to carry out the activities permitted by the easement. *S.E. & H.L. Shepherd Co. v. Shibles*, 100 Me. 314, 61 A. 700, 702 (1905). Excessive use of an easement is a trespass. *Morissette v. Somes*, 2001 ME 152, ¶ 10, 782 A.2d 764 (citing *Reed v. A.C. McLoon & Co.*, 311 A.2d 548, 552 (Me.1973)).

The Complaint alleges two trespasses. First, it alleges that a fence, brick patio and landscape timbers encroach onto the DeWolfe property. Here, the location of the boundary and the encroachments as depicted on the Survey. The court finds that the fence, patio and landscaping encroach on the DeWolfe property as depicted on the Survey and are outside of Agro's easement rights. Therefore, they constitute a trespass.

Second, the Complaint alleges that Agro's vehicles parked on Cottage Road are a trespass. Whether the parking exceeds the scope of the Agros's easement to use Cottage Road to "pass and repass" is a more difficult question. There is no Maine law directly on point with respect to the parking issue. Generally, "[w]hen the purposes of an express easement are not

4

specifically stated, a court must ascertain the objectively manifested intention of the parties [to the original conveyance] in light of circumstances in existence recently prior to the execution of the conveyance." *Flaherty v. Muther*, 2011 ME 32, ¶ 55, 17 A.3d 640 (quoting *Fine Line, Inc. v. Blake*, 677 A.2d 1061, 1064 (Me. 1996)).

In addition, the court looks to the use of the easement and acts acquiesced to during the years shortly after the original grant. *Flaherty*, 2011 ME 32, ¶ 55, 17 A.3d 640 (quoting *Guild v. Hinman*, 1997 ME 120, ¶ 9, 695 A.2d 1190) ; *see also Anchors v. Manter*, 1998 ME 152, ¶ 18, 714 A.2d 134.  Other jurisdictions have held that the mere use of the terms "ingress and egress," unambiguously limit the right of the easement holder to travel on the easement and do not convey a right to park. *Kwolek v. Swickard*, 944 N.E.2d 564, 572-73 (Ind. Ct. App. 2011) (citing cases from Florida, New York and Ohio).

Here, the terms "pass and repass" are similar to the terms "ingress and egress."  While temporary stoppage of motor vehicles may, from time to time, be considered a permissible incidental use of a right of way, full time storage of vehicles would not.  There is nothing in the record that suggests any evidence that the original grantors intended differently.  The evidence suggests that prior to the construction of the patio and fence, Agro mostly parked next to the house on his own property.  From time to time cars may have extended into the right of way, but there is nothing to suggest the original grant of an easement called for full time storage and parking of vehicles in the right of way.  There is no evidence regarding the practice of Agro's predecessor(s) in title closer in time to the original grant.  The court concludes, therefore, that keeping automobiles is not a right allowed by the easement on the DeWolfe property and is a trespass.[1]

---

[1] The court makes no distinction between the right of way as "relocated" and the "original" right of way. The Complaint does not ask the court to declare the right of parties generally to the "original" right of way. For the

5

There is no reference to statutory trespass, 14 M.R.S. § 7551-B, in the Complaint, although it is raised in the trial brief. The statute reads:

> A person who intentionally enters the land of another without permission and causes damage to property is liable to the owner in a civil action if the person:
>
> A. Damages or throws down any fence, bar or gate; leaves a gate open; breaks glass; damages any road, drainage ditch, culvert, bridge, sign or paint marking; or does other damage to any structure on property not that person's own; or
> B. Throws, drops, deposits, discards, dumps or otherwise disposes of litter, as defined in Title 17, section 2263, subsection 2, in any manner or amount, on property not that person's own.

14 M.R.S. § 7551-B.

The court concludes that neither of the two alleged trespasses, the parking or the outdoor improvements violated Section 7551-B. Therefore, to the extent the Plaintiffs allege a statutory trespass claim, the court finds for the Defendant.

## C. Remedies

For remedies, the Plaintiff seeks damages, a declaratory judgment and injunctive relief. The court does not find that Plaintiff proved any damages on the common law trespass claim. Therefore, nominal damages are appropriate. *See Gaffny v. Reid,* 628 A.2d 155, 158 (Me.1993). Recovery of attorney's fees is not available absent statutory authority.

With respect to the declaratory judgment, the court declares that the boundary between the properties is as depicted on the Survey. The elements depicted on the Survey that encroach on the DeWolfe property and the storage of automobiles are trespasses.

---

purposes of this case, the court assumes Agro can access his property using the portions of the "original" right of way abutting his property as he does using the portions of the "current" right of way. *Davis v. Bruk,* 411 A.2d 660, 665 (Me. 1980) (once the easement location is fixed, servient owner cannot relocate easement without agreement of the parties). Otherwise, the court does not address the issue here.

6

With respect to the request for an injunction, the Court may grant permanent injunctive relief if it concludes the following: (1) the plaintiff will suffer irreparable injury if the injunction is not granted; (2) such injury outweighs any harm which granting the injunctive relief will inflict on the defendant and (3) the public interest will not be adversely affected by granting the injunction. *See Bangor Hist. Track, Inc. v. Dep't of Agric.*, 2003 ME 140, ¶ 9, 837 A.2d 129. The test regarding likelihood of success is not applicable to a permanent injunction.

The court concludes that the invasion of property rights and the risk of the invasion continuing without an injunction are irreparable injuries. Furthermore, the burden placed on the DeWolfes outweighs the burden on Agro of returning the same situation that existed prior to the construction of the patio and the fence. In order to address any burden on Agro of acting immediately, the court provides time for Agro to comply.

The court appreciates that, for Agro and his family, adjusting the outdoor improvements and having to figure out how to address his parking are burdens. The court, however, has to respect the boundaries described in the parties' deeds. The surveyor's depiction of those boundaries on the face of the earth is undisputed. The court also has to respect that the language in the deed granting the right of way does not expand beyond the right to pass and repass to allow the storage of motor vehicles. Therefore, those are burdens that the court does not weigh in its analysis.

The court orders as follows.

1. Defendant to remove the encroaching portions of fence, patio and landscaping within 90 days.

2. Beginning on July 1, 2024, to allow time for Agro to resolve his parking situation, the Defendant may not store vehicles or routinely park on the right of way. In the meantime,

7

storage is limited only to his primary vehicle. Incidental and temporary parking, such as guests or deliveries, are permitted, as long as they do not obstruct the right of way.

The Entry is:

1. To the extent Count I alleges a statutory trespass, the court finds for the Defendant.

2. To the extent Count I alleges a common law trespass, the court finds for the Plaintiffs and awards $1 in damages.

3. The court declares that boundary dividing the Agro and the DeWolfe property is as depicted on a survey by David St. Clair, as revised on November 23, 2022, and marked at trial as Exhibit D-1. To the extent there is a fence, patio and landscaping encroaching, or vehicles stored on the property, they are trespassing.

4. The court grants injunctive relief as stated with respect to the encroaching features as well as the storage of automobiles.

This Order is incorporated on the docket by reference pursuant to M.R.Civ.P. 79(a).

DATE: 3/5/24

Thomas R. McKeon
Justice, Maine Superior Court

Entered on the Docket: 3-6-24

Defendant

Tyrone Agro
89 Cottage Road
Gray, ME 04039

Plaintiff's Atty.

Paul Bulger, Esq.
75 Pearl Street, Suite 410D
Portland, ME 04101

REC'D CUMB CLERKS OF
MAR 5 '24 PM3:49

8