2012 ME 138

**Jo A. WOODWORTH**

v.

**Paul GADDIS et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Oct. 10, 2012.

Decided: Dec. 18, 2012.

Toff Toffolon, Esq., Machias, and Jo Woodworth, pro se, for appellant Jo Woodworth.

Ronald A. Mosley, Jr., Esq., Machias, for appellee Paul Gaddis.

Christopher J. Whalley, Esq., Ellsworth, for appellee Crane's Contract Cutting, Inc.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and JABAR, JJ.

LEVY, J.

[¶ 1] Jo A. Woodworth appeals from a judgment of the District Court (Machias, *Cuddy, J.*) awarding her $67,180 in damages pursuant to 14 M.R.S. § 7552 (2011) based on a timber harvest trespass. Woodworth argues that the court erred in its damages award and in declining to grant her motion to add a party pursuant to M.R. Civ. P. 21. Because we conclude that the court erred by not doubling Woodworth's damages as required by 14 M.R.S. § 7552(4)(A), we modify the damages award and, as modified, affirm the judgment.

## I. BACKGROUND

[¶ 2] "The trial record, reviewed in the light most favorable to the judgment, supports the following facts." *Van Dam v. Spickler*, 2009 ME 36, ¶ 2, 968 A.2d 1040. Woodworth owns real property in Steuben, separated from David Robertson's property by a parcel owned by a third party.[1] In 2008, Robertson contracted with David Crane and Crane's Contract Cutting, Inc. to harvest timber on his property. Crane's Contract Cutting in turn contracted with Paul Gaddis, a licensed forester, to identify Robertson's property lines. On November 15, 2008, Gaddis employed a series of substandard procedures in identifying the boundaries of the Robertson property, and mistakenly marked a portion of Woodworth's land as part of the Robertson property.[2] On November 22, Gaddis

---

1. Although Robertson passed away after the court entered judgment, we continue to refer to the parcel as his for the sake of clarity.

2. According to Maine Forest Ranger Courtney Hammond, Gaddis (1) failed to properly identify the Robertson property line; (2) used the wrong starting point in marking the property, leading to inaccurate markings; (3) relied on tax maps to establish boundary lines, as opposed to a deed description; (4) used a compass without also employing a Global Positioning System (GPS) device; (5) paced the property lines as opposed to using a more precise form of measurement; and (6) relied on conversations with two local people to confirm property boundaries without determining whether those individuals had any basis for their opinions as to the boundaries. Gaddis himself admitted that his conduct in marking the Robertson boundary was the "biggest honest mistake" that he had ever made.

and Crane partially walked the property, and Gaddis identified what he had marked as the northern boundary of the Robertson property. Relying on Gaddis's markings of the property boundaries, Crane's Contract Cutting then proceeded to remove trees from 17.9 acres of Woodworth's property.

[¶ 3] In May 2009, Woodworth filed a complaint against Gaddis and Robertson, asserting common law trespass, damages pursuant to 14 M.R.S. § 7552, and negligence. In October 2009, the court (*Romei, J.*) granted Woodworth's M.R. Civ. P. 21 motion to add Crane as a necessary party. In March 2011, Woodworth filed a motion to substitute Crane's Contract Cutting for Crane, which the court granted on April 6, 2011. On October 18, 2011, more than two years after filing the complaint and less than one month before trial, Woodworth filed a M.R. Civ. P. 21 motion to once again add Crane as a party. The court denied as "not timely" Woodworth's motion to add Crane.

[¶ 4] During the trial, Woodworth called Maine Forest Ranger Courtney Hammond to testify, who estimated that the mill-delivered value of the timber cut from Woodworth's property was approximately $44,000. Forest Ranger Hammond testified that restoring the property would cost $23,180, based on per-acre restoration estimates by the Natural Resources Conservation Service (NRCS) prepared in 2008 or 2009. Woodworth also called witness David Garcelon, a conservationist for NRCS, who provided higher per-acre restoration estimates based on 2011 NRCS figures.[3]

[¶ 5] In a written judgment, the court (*Cuddy, J.*) concluded that Gaddis, Crane's Contract Cutting, and Robertson each violated 14 M.R.S. § 7552.[4] The court made factual findings crediting Forest Ranger Hammond's testimony that the value of the trees cut from Woodworth's property was $44,000, and the cost to restore the property was $23,180. The court concluded that Woodworth's actual damages pursuant to section 7552(3) totaled $67,180, which represented the combined market value of the wood cut and the cost of regeneration.

[¶ 6] The court considered whether to apply section 7552(4), which permits double damages for negligent conduct, and treble damages for intentional or knowing conduct. The court concluded that all three defendants were negligent, but that none of the defendants acted intentionally or knowingly. Gaddis was negligent for failing to exercise proper care in identifying the boundaries of the Robertson property. Crane's Contract Cutting was negligent for relying on Gaddis's work. Robertson, who failed to appear at trial, was negligent for having engaged Crane's Contract Cutting. However, the court declined to double Woodworth's damages pursuant to 14 M.R.S. § 7552(4)(A) because it determined that the maximum damages award authorized by statute was the greater of the actual damages pursuant to section 7552(3), or $250. Accordingly, the court awarded Woodworth $67,180, plus interest and costs, for which

3. Trial evidence included a letter from Garcelon to Woodworth, in which Garcelon estimated that the restoration cost, based on NRCS rates, was $360 per acre for "Tree/Shrub Site Preparation," and an additional $1805 per acre for "Tree/Shrub Establishment." The letter indicated that NRCS may fund up to 90% of the restoration costs for qualifying landowners.

4. The court also found all three defendants liable on the other common law counts. We need not address these counts because no party contests them.

the defendants were jointly and severally liable.

## II. LEGAL ANALYSIS

[¶ 7] On appeal, Woodworth argues that the court erred (A) in its damages award, and (B) in declining to grant her motion to add Crane as a party. We begin by addressing the calculation of damages pursuant to 14 M.R.S. § 7552.

### A. Damages Pursuant to 14 M.R.S. § 7552

[¶ 8] Title 14 M.R.S. § 7552,[5] "replaces the common law with respect to damage to trees from a trespass." *Mehlhorn v. Derby*, 2006 ME 110, ¶ 7, 905 A.2d 290 (quotation marks omitted). Thus, if a party violates the listed "[p]rohibitions" set forth in section 7552(2), the statute provides for a three-step process to calculate damages. *See* 14 M.R.S. § 7552(2)-(5). First, subsection (3) identifies the "[m]easure of damages" for violations of subsection (2), listing several alternate measures of actual damages, including regeneration damages. *Id.* § 7552(3). Second, subsection (4) pro-vides the "[d]amages recoverable," which the court calculates by doubling or trebling a party's subsection (3) actual damages depending on the trespasser's degree of fault. *Id.* § 7552(4). Third, subsections (4) and (5) provide for certain costs and fees in addition to other damages obtained as a result of the trespass. *Id.* § 7552(4)(C), (5). Woodworth contends that the court erred first in its calculation of actual damages by not awarding her additional regeneration damages pursuant to section 7552(3), and second in not dou-bling or trebling her actual damages pur-suant to section 7552(4).

### 1. Regeneration Damages Pursuant to 14 M.R.S. § 7552(3)(B)

 [¶ 9] We will disturb a damages award only "when there is no competent evidence in the record to support the award." *Estate of Hoch v. Stifel*, 2011 ME 24, ¶ 43, 16 A.3d 137 (quotation marks omitted). Section 7552(3) permits the in-jured party to "recover as [actual] dam-ages either the value of the lost products themselves or the diminution in value of the real estate as a whole resulting from

---

5. In relevant part, 14 M.R.S. § 7552 (2011) provides:

> **2. Prohibitions.** Without permission of the owner a person may not:
> **A.** Cut down, destroy, damage or carry away any forest product, ornamental or fruit tree, agricultural product, stones, gravel, ore, goods or property of any kind from land not that person's own; or
> . . . .
> **3. Measure of damages.** This subsection governs the measurement of damages re-sulting from a violation of subsection 2.
> **A.** When agricultural or forest products have been destroyed or carried away, the owner may recover as damages either the value of the lost products themselves or the diminution in value of the real estate as a whole resulting from the violation, whichever is greater.
> **B.** For lost trees, the owner may claim in lieu of market value the forfeiture amounts determined in Title 17, section 2510, subsections 2 and 3. In addition, the owner's damages may include the costs for regeneration of the stand in ac-cordance with Title 12, section 8869. The court may reduce the damages awarded for good cause shown when the cutting of trees was done negligently or without fault.
> . . . .
> **4. Damages recoverable.** Damages are re-coverable as follows.
> **A.** A person who negligently or without fault violates subsection 2 is liable to the owner for 2 times the owner's damages as measured under subsection 3 or $250, whichever is greater.
> **B.** A person who intentionally or know-ingly violates subsection 2 is liable to the owner for 3 times the owner's damages as measured under subsection 3 or $500, whichever is greater.

the violation, whichever is greater." 14 M.R.S. § 7552(3)(A). Additionally, the actual "damages may include the costs for regeneration of the stand [of lost trees] in accordance with Title 12, section 8869." *Id.* § 7552(3)(B). The court concluded that Woodworth's actual damages totaled $67,180, based on its factual findings crediting Forest Ranger`Hammond's testimony that the value of the trees cut was $44,000 and that the regeneration cost was $23,180. Woodworth does not take issue with the tree value calculation, but contends that the court erred in failing to rely on the higher regeneration estimate provided by Garcelon.

[¶ 10] The court did not err in its determination of the regeneration cost because Forest Ranger Hammond's testimony provided competent evidence for the court's regeneration cost calculation. *See Hoch,* 2011 ME 24, ¶ 43, 16 A.3d 137. Where Woodworth presented two witnesses to testify as to the cost of regeneration, and those witnesses provided the court with different regeneration cost estimates, the court was permitted to credit the testimony of one witness over the other. *See Arrow Fastener Co. v. Wrabacon, Inc.,* 2007 ME 34, ¶ 16, 917 A.2d 123 ("a fact-finder ... is responsible for weighing the evidence to decide between the competing versions of the truth." (quotation marks omitted)). Furthermore, the court was not bound to adopt the more recent of the two cost estimates simply because it was more recent.

2. Double and Treble Damages Pursuant to 14 M.R.S. § 7552(4)

[¶ 11] Having determined that the court did not err in its calculation of Woodworth's actual damages, we next turn to Woodworth's argument that the court should have doubled or trebled her actual damages pursuant to section 7552(4). At the second step of the damages analysis pursuant to section 7552, an injured party is entitled to double damages if the trespasser acted negligently or without fault, or treble damages if the trespasser acted intentionally or knowingly. 14 M.R.S. § 7552(4)(A), (B).

■ [¶ 12] We begin with Woodworth's contention that the defendants acted intentionally or knowingly, entitling her to treble damages. We review the intentional or knowing nature of tree cutting pursuant to section 7552 for clear error. *See Dupuis v. Soucy,* 2011 ME 2, ¶ 21, 11 A.3d 318. Factual findings are not clearly erroneous "if supported by competent evidence." *Weinstein v. Hurlbert,* 2012 ME 84, ¶ 9, 45 A.3d 743. Because Woodworth had the burden of proof at trial to show the intentional or knowing nature of the trespass, she will only prevail on appeal if she demonstrates that the evidence compelled such a finding. *See Handrahan v. Malenko,* 2011 ME 15, ¶ 13, 12 A.3d 79.

[¶ 13] Treble damages for intentional or knowing conduct are available pursuant to section 7552(4)(B) where the perpetrator is "subjectively aware that his conduct was contrary to [the landowner's] rights in the property, or that [the trespasser's] conduct displayed more than an utter and complete indifference to and disregard for [the landowner's] rights." *Dupuis,* 2011 ME 2, ¶ 22, 11 A.3d 318. In the present case, there was competent evidence to support the court's conclusion that Gaddis and Crane's Contract Cutting acted negligently. Moreover, the evidence did not compel the court to find that the defendants acted knowingly or intentionally.[6] Accordingly,

---

**6.** Woodworth does not contest the court's finding that Robertson acted negligently as opposed to intentionally or knowingly, therefore waiving any argument in this respect.

the court did not err in declining to award treble damages to Woodworth. *See Handrahan*, 2011 ME 15, ¶ 13, 12 A.3d 79; *Dupuis*, 2011 ME 2, ¶ 21, 11 A.3d 318.

 [¶ 14] Although we conclude that Woodworth is not entitled to treble damages, we must still consider her contention that double damages were mandatory pursuant to section 7552(4)(A), given the court's finding that the defendants acted negligently in violating section 7552(2). We review de novo the proper interpretation of section 7552(4)(A). *See Goodrich v. Me. Pub. Emps. Ret. Sys.*, 2012 ME 95, ¶ 6, 48 A.3d 212.

[¶ 15] Where a person acts negligently or without fault in cutting trees in violation of section 7552(2), that person "is liable to the owner for 2 times the owner's damages as measured under subsection 3 [the actual damages provision] or $250, whichever is greater." 14 M.R.S. § 7552(4)(A). Here, the court interpreted the double damages provision as limiting the total award of damages to the greater of the actual damages pursuant to subsection 3, or $250, and declined to double Woodworth's actual damages for this reason.

[¶ 16] Contrary to the court's interpretation, upon a finding of negligence, section 7552(4)(A) requires a court to award the greater of either twice the actual damages pursuant to section 7552(3), or $250. *See Mehlhorn*, 2006 ME 110, ¶ 8 & n. 3, 905 A.2d 290 (noting that a damages award of $250 pursuant to section 7552(4)(A) implies that the section 7552(3) actual damages award "even when doubled, [is] less than $250"); *see also Dupuis*, 2011 ME 2, ¶¶ 13, 26, 11 A.3d 318 (upholding a damages award of $12,900 pursuant to 7552(4)(B) based on $4300 actual damages

multiplied by three for intentional or knowing conduct, where the relevant language of subsections (4)(A) and (4)(B) is identical). Moreover, we have previously defined the language "is liable" in section 7552(4) to make damages mandatory as opposed to discretionary. *See Currier v. Huron*, 2008 ME 19, ¶ 15 & n. 4, 940 A.2d 1085. Accordingly, upon finding that the defendants acted negligently in violating section 7552(2), the court erred by failing to double Woodworth's actual damages as mandated by section 7552(4)(A). *See id.; Mehlhorn*, 2006 ME 110, ¶ 8 & n. 3, 905 A.2d 290.

## B. Denial of the Motion to Add a Party

 [¶ 17] Woodworth also contends that the court erred in declining to grant her M.R. Civ. P. 21 motion to add Crane as a party. The court's order denying the motion indicated that the motion was "not timely." We will uphold a trial court's decision not to add a party "unless the moving party clearly demonstrates a manifest abuse of discretion and the necessity to grant the motion to prevent injustice." *Cnty. Forest Prods., Inc. v. Green Mountain Agency, Inc.*, 2000 ME 161, ¶ 56, 758 A.2d 59 (quotation marks omitted).

[¶ 18] The court's denial of Woodworth's motion to add Crane for a second time was not a manifest abuse of discretion, and Crane's addition was not necessary to prevent injustice. Woodworth's original complaint of May 2009 did not include Crane, and the court granted Woodworth's first motion to add Crane as a necessary party in October 2009. Nearly two years after filing the complaint, Woodworth filed a motion to substitute Crane's Contract Cutting for Crane, which the court granted on April 6, 2011. Six months later, and less than one month

---

*See Laqualia v. Laqualia*, 2011 ME 114, ¶ 34, 30 A.3d 838 (arguments not developed in the appellate brief are waived).

before trial, Woodworth again filed a motion to add Crane as a party.

[¶ 19] The substantial delay between the filing of the complaint and the second motion to add Crane as a party was a factor supporting the denial of the motion. *See id.* ¶ 58 (noting that a court would be within the bounds of its discretion to deny a motion to add a party based on delay and expense alone because the motion came almost a year and a half after the case began); *Chrysler Credit Corp. v. Bert Cote's L/A Auto Sales, Inc.,* 1998 ME 53, ¶¶ 16–18, 707 A.2d 1311 (finding that although the passage of time alone is not sufficient grounds for denying a motion to add a party, denial was within the bounds of the court's discretion when the delay prejudiced the proposed defendant by depriving it of necessary time to prepare a defense). Additionally, if Crane were reintroduced as a party less than one month before trial, it could have resulted in additional expense, prejudice to Crane in having to prepare a defense after having been dismissed from the case, and further postponement of the trial. Accordingly, the court did not abuse its discretion in denying Woodworth's motion to add Crane for a second time.[7] *See Cnty. Forest Prods.,* 2000 ME 161, ¶ 56, 758 A.2d 59.

The entry is:

Judgment modified to double the court's award of damages pursuant to 14 M.R.S. § 7552(4)(A). Judgment affirmed in all other respects.

---

7. The only authority Woodworth cites in support of her argument for adding Crane as a party, *Advanced Construction Corp. v. Pilecki,* 2006 ME 84, 901 A.2d 189, is distinguishable. Although *Pilecki* involved the liability of a corporation and the corporation's sole shareholder, it is of no help to Woodworth because the shareholder in *Pilecki* was a party to the action and the corporation was liable by agreement, whereas Crane ceased to be a party after Woodworth chose to dismiss him and he has not consented to assuming liability attributed to Crane's Contract Cutting. *See id.* ¶¶ 3, 8 & n. 3, 9.